UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH DIAZ,

                        Petitioner,

-against-

SUPERINTENDENT EARL BELL,

                        Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/16/2022__

18 Civ. 10121 (AT) (DF)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Joseph Diaz, filed an application under 28 U.S.C. § 2254 challenging his New York state court conviction for manslaughter in the first degree. Pet., ECF No. 1. Before the Court are Respondent's objections to the report and recommendation of the Honorable Deborah C. Freeman (the "R&R") recommending that the petition be granted. *See* R&R, ECF No. 19; Resp. Obj., ECF No. 24. For the reasons stated below, the R&R is ADOPTED in part, and REJECTED in part, and the petition is DENIED.

**BACKGROUND**[1]

    Petitioner was convicted in the New York Supreme Court, Bronx County, of manslaughter in the first degree, for the 2009 shooting of Aisha Santiago, who was killed during a shooting that involved multiple participants. R&R at 2. At trial, the prosecution presented the testimony of several witnesses, including eyewitnesses, a paramedic, a medical examiner, a ballistics expert, and New York City Police Department ("NYPD") officers. *Id.* at 3. The

---

[1] The Court presumes familiarity with the facts, which are set forth in the R&R, and, therefore, only briefly summarizes them here. *See* R&R at 2–14. Where Respondent has raised specific objections to the R&R's characterization of the facts, the Court has conducted a *de novo* review of the trial court record. And, where Respondent has not raised specific objections to the R&R's characterization of the facts, the Court has taken the facts set forth therein as true. *See Roberts ex rel. Phillip v. Happiness Is Camping, Inc.*, No. 10 Civ. 4548, 2012 WL 844331, at *1 (S.D.N.Y. Mar. 13, 2012). The Court has also included additional details from the trial court record as it deems necessary.

defense called one witness, an off-duty police officer who was in the neighborhood at the time of the shooting. *Id*.

I.   Eyewitnesses

Orlando Soto testified at trial that the shooting involved two groups of men: one group, which included three or four black and Hispanic men, facing west, towards Willis Avenue, and another group, which included four or five Hispanic men, facing east, towards Brook Avenue. *See id*. at 5; *see also* Trial Tr. II at 257–59, ECF No. 13-5. Soto stated that he saw a Hispanic man from the east-facing group, who was wearing a red shirt, blue jeans, and a baseball cap, shooting a silver gun east, towards Brook Avenue. *See* Trial Tr. II at 252, 260–63, 269. Soto also recalled a member of the west-facing group shooting towards Willis Avenue from 409 East 146th Street. *See id*. at 252, 264–65, 267. The day after the shooting, Soto viewed a lineup and identified Petitioner as the shooter. *See id*. at 270, 273; Trial Tr. IV at 710, ECF No. 13-7. At trial, Soto claimed that he could not identify Petitioner as the shooter because he was "not good with faces after a certain amount of years," but he testified that he "was certain" Petitioner was the shooter when he made his initial identification. Trial Tr. II at 268–69, 278.

Another witness, Michael Jones, testified that at the time of the shooting he saw a Hispanic man wearing a red shirt, but no hat, holding a gun at the corner near Willis Avenue and 146th Street. *See* Trial Tr. III at 509–10, 515–16, ECF No. 13-6; Trial Tr. IV at 534. Jones, who is 5'10", described the man as a "little taller than [him]." Trial Tr. IV at 526; *see also* Trial Tr. III at 507–08. Petitioner is 6'2". R&R at 8. Jones testified that he heard gun shots and saw the man pointing the gun down the street away from Willis Avenue. *See* Trial Tr. III at 509; Trial Tr. IV at 534. He also described the man in the red shirt passing a gun to a man in a white shirt after the shooting concluded. *See* Trial Tr. III at 509–10. The hand-off of the gun was captured

by surveillance video footage. *See id.* at 513–14. Five days after the shooting, Jones reviewed a photo array and identified Petitioner as the man in the red shirt who was holding the gun during the shooting. *See* Trial Tr. IV at 521, 565–67. At trial, Jones also identified Petitioner as the man in the red shirt with the gun. *See id.* at 516–17.

A third witness, Susana Castro, testified that she saw a different man shooting from Willis Avenue towards a group of men standing at 409 East 146th Street, in the direction of Brook Avenue. *See* Trial Tr. IV at 621, 625, 627, 655, 663–75. She stated that the shooter was standing with a group of four other Hispanic men. *See id.* at 621, 634. Castro also stated that two of the other men in the group had guns. *See id.* at 650.

Witnesses testified that, during the shooting, Santiago, the victim, had been standing in front of her building at 445 East 146th Street near the corner of Brook Avenue. *See* Trial Tr. II at 266–67; Trial Tr. V at 748–49, ECF No. 13-8. Her son, Anthony Flores, testified that he heard shots and looked towards Willis Avenue, where he saw people scattering. *See* Trial Tr. V at 748–50. He then looked back towards his mother, who had collapsed. *See id.*

Witnesses testified that other shots were fired from 409 East 146th Street towards Willis Avenue. *See, e.g.*, Trial Tr. II at 252, 264–65, 267–68; Trial Tr. IV at 591, 594–96, 628–30. 409 East 146th Street sits between the corner of Willis Avenue and 445 East 146th Street. *See* R&R at 5.

II.     The Admission of the Disputed Documents

Detective Paul Brown testified that the lead detective in the investigation, Detective Glenn Jacklitsch, arrived at the scene two hours after the shooting, processed the scene, and collected evidence according to protocol. *See* Trial Tr. I at 63–69, 88, 100, ECF No. 13-4; Trial Tr. II at 193. Brown stated that Jacklitsch was the one who prepared the crime scene reports,

took photographs, and created a diagram depicting where he had collected the evidence that was recovered at the scene. *See* Trial Tr. I at 63–69, 88, 100. During his testimony, Brown explained that "all of [the] information in the case c[a]me from Jacklitsch's reports." Trial Tr. II at 125. Jacklitsch did not testify at trial because he had retired. R&R at 12. Brown testified in his place. *See* Trial Tr. I at 64.

During Brown's testimony, several exhibits were admitted as business records. These included (1) the crime scene photographs Jacklitsch took, (2) Jacklitsch's crime scene reports, which included descriptions of the evidence, where he found it, and what he believed it to be, (3) the diagram Jacklitsch prepared that showed where he found the evidence, and (4) a diagram Brown created that was intended to duplicate and correct errors in Jacklitsch's diagram. *See, e.g.*, *id*. at 65, 97–101, 103–04, 106–09, 112.

In addition to forming the basis for Brown's testimony, these documents were also used during the testimony of the ballistics expert, Detective Jonathan Fox, who specifically referenced them when discussing how a .45 caliber cartridge casing was found on the corner of Willis Avenue, and a .45 caliber copper-jacketed bullet was found in a car near Santiago's building. *See* Trial Tr. III at 328–29, 334–38, 344–47. Numerous eyewitnesses also referenced Brown's diagram to illustrate their locations during the shooting, and, during the trial, the court allowed the jury to visit the crime scene and bring Brown's diagram. *See*, *e.g.*, Trial Tr. II at 254–56; Trial Tr. III at 374–76, 457; Trial Tr. IV at 530–32. Furthermore, during its summation, the prosecution relied on the ballistics evidence as described in Brown's diagram to urge the jury that Petitioner was the shooter who killed Santiago. *See* Trial Tr. VI at 947–50, 958, 990–91, ECF No. 13–9.

At trial, Petitioner objected to the introduction of the exhibits and argued that he was being denied his "right to confrontation of the individual who was there and took those photographs, [and who] made those measurements" under *Crawford v. Washington*, 541 U.S. 36 (2004). Trial Tr. I at 89, 92. He argued that the exhibits were testimonial and were being introduced to show that he was the shooter because they purport to establish where he was at the time of the shooting. *See id*. And, Petitioner contended that because the issue of bullet trajectory was critical to the prosecution's case, he was being denied the ability to present a viable defense. *See id*. at 93.

III.     Verdict, Sentencing, Direct Appeal, and Habeas

After two days of deliberations, the jury found Petitioner guilty of first-degree manslaughter. R&R at 24. During deliberations, the jury asked for Brown's crime scene diagram twice. *Id*. Then, at sentencing, the trial court sentenced Petitioner to 25 years' imprisonment and five years' post-release supervision. *Id*.

On appeal before the Appellate Division, First Department, Petitioner argued, *inter alia*, that the documents, photographs, and diagrams should not have been admitted through Brown because they were testimonial in nature. *Id*. at 24–25. He contended that their purpose was to "codify evidence for use in the prosecution of a homicide," and that they contained "the precise testimony [Jacklitsch] would be expected to provide if called at trial." *Id*. at 25 (quoting Pet. App. Br. at 47–48, ECF No. 11-1 (quotation marks and citations omitted)). The Appellate Division affirmed Petitioner's conviction and sentence, finding that the crime scene evidence was not testimonial because it "[did] not link the commission of the crime to a particular person." *People v. Diaz*, 151 A.D.3d 502, 503–04 (1st Dep't 2017) (citation omitted) (alteration in original). It also found that, even if it was error to admit the documents, such error was

5

harmless because "evidence showing the locations where the officer found cartridge cases and other ballistic evidence shed little or no light on any of the disputed issues at trial, and there is no reasonable possibility that this evidence affected the verdict." *Id*. at 503.  Petitioner then sought leave to appeal to the New York Court of Appeals, but this request was denied.  R&R at 30–31.

On October 23, 2018, Petitioner filed the instant petition.  *See* Pet.  And, on April 14, 2022, Judge Freeman issued the R&R finding that "the Appellate Division's rejection of Petitioner's federal Confrontation Clause claim was not only erroneous, but an unreasonable application of federal law, warranting habeas relief under Section 2254(d)," R&R at 60, and that the error was not harmless, *id*. at 63.  Respondent timely filed objections, *see* Resp. Obj., and Petitioner timely filed a response, Pet. Res., ECF No. 25.

**DISCUSSION**

I. <u>Standard of Review</u>

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party makes specific objections, the court reviews *de novo* those portions of the report and recommendation to which objection is made.  *See id.*; Fed. R. Civ. P. 72(b)(3).  However, "when a party makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014); *see also Bailey v. U.S. Citizenship & Immigr. Serv.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review.").  In addition, "new arguments and factual assertions cannot properly be raised for the first time in objections to the

report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014).  The court may adopt those portions of the report and recommendation to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (quotation marks and citation omitted).

II.  Respondent's Objections

A.  AEDPA

Petitioner's claims are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under AEDPA, if a petitioner's claims were adjudicated on the merits in state court, a district court may grant relief only, as relevant here, when the state court's decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor,* 529 U.S. 362, 412 (2000), or when it "was based on an unreasonable determination of the facts in light of evidence presented in the [s]tate court proceeding," 28 U.S.C. § 2254(d)(2); *see also Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022).

A state court decision is contrary to federal law if the state court reaches "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13.  A federal court may overrule a state court decision as an "unreasonable application" of federal law under Section 2254(d)(1) only if the federal court finds the decision to be "objectively unreasonable." *Id.* at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair[-]minded jurists could disagree

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks and citation omitted). And, when assessing whether a state court's determination of facts is unreasonable, courts cannot grant relief if they determine that "[r]easonable minds reviewing the record might disagree about the finding in question." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015) (quotation marks and citation omitted).

Moreover, when reviewing a state court's determination that an error at trial was harmless, a federal court can overturn a state court conviction only when the federal court finds (1) that the error had a "'substantial and injurious effect or influence' on the verdict," *Brown*, 142 S. Ct. at 1523 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)), and (2) that the state court's decision that the error was harmless was contrary to law or involved an unreasonable determination of law or fact, *id*. at 1525, 1528. In sum, a court must decide whether it "harbors grave doubt about the petitioner's verdict," and whether "every fair[-]minded jurist would agree that an error was prejudicial." *Id*. at 1525.

B.   Confrontation Clause Violation

Petitioner argues that the trial court erred by admitting Jacklitsch's crime scene reports and diagram, as well as Brown's diagram based on Jacklitsch's materials, without producing Jacklitsch for cross-examination, and that the Appellate Division's affirmance of this trial court ruling was "contrary to" and constituted an "unreasonable application of" clearly established Supreme Court precedent.[2]  *See* Pet. Mem. at 22–48, ECF No. 4.

The R&R recommends finding that the Appellate Division's decision represented an unreasonable application of clearly established federal law because the materials were

---

[2] Although Petitioner also appears to object to the admission of the photograph Jacklitsch took, his memorandum of law focuses entirely on the crime scene reports and diagrams, and, therefore, the R&R did not consider any arguments as they related to the photographs. *See* R&R at 52 n.18.

testimonial under the applicable Supreme Court precedent. R&R at 53. It determined that, because these materials were created "in aid of a police investigation" and had an "evidentiary purpose," R&R at 53 (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011)), any objective witness would "believe that [those documents] would be available for use at a later trial" and would "expect that the statements contained therein would be used in a criminal prosecution," *id*. at 54 (quoting *Crawford*, 541 U.S. at 52) (alteration in original). The R&R also found that the materials were formal, *id*. at 54–55, and that they tended to "prov[e] [a] fact necessary for [Petitioner's] conviction," *id*. at 55 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313 (2009)), both of which suggest that they were testimonial. The R&R's findings relied heavily on the Second Circuit's recent decision in *Garlick v. Lee*, 1 F.4th 122 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1189 (2022), which granted a habeas petition based on a state court erroneously deciding that an autopsy report was not testimonial.

In his objections, Respondent argued that the R&R erred because it (1) "mistakenly believed that Supreme Court precedent addressing the intersection of the Confrontation Clause and forensic reports was settled in 2017," and (2) incorrectly determined that the Appellate Division relied on *People v. Freycinet*, 11 N.Y.3d 38 (2008), a New York Court of Appeals case decided before *Melendez-Diaz* and *Bullcoming*, when it actually relied on *People v. John*, 27 N.Y.3d 294 (2016), a Court of Appeals case decided after those cases and *Williams v. Illinois*, 567 U.S. 50 (2012), the last Supreme Court case relevant to the analysis of the Confrontation Clause issue. Resp. Obj. at 2–8. Respondent's objections also criticized the R&R's reliance on *Garlick*, referring to the Second Circuit's "flawed reasoning" in that case. *Id*. at 4–6.

Under the relevant Supreme Court precedent,[3] statements are considered testimonial if they are "extrajudicial statements contained in formalized testimonial material, such as affidavits, depositions, prior testimony, or confessions," or are "made under circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." *Garlick*, 1 F.4th at 129 (quoting *Crawford*, 541 U.S. at 51–52). The Supreme Court has also explained that statements are more likely to be testimonial when they are "made for the purpose of establishing or proving some fact," *id*. at 130 (quoting *Melendez-Diaz*, 557 U.S. at 310 (quotation marks omitted)), or are formal documents made in the context of a criminal investigation, *id*. at 131 (quoting *Bullcoming*, 564 U.S. at 664–65). And, it has specifically rejected the argument that documents are testimonial only when they "directly accuse" someone of wrongdoing, and explained that "even statements which result from purportedly 'neutral scientific testing' must be subject to cross-examination because such tests are not necessarily 'as neutral or as reliable' as advertised and are not 'uniquely immune from the risk of manipulation.'" *Id*. at 130 (quoting *Melendez-Diaz*, 557 U.S. at 313, 318); *see also id*. at 132 (explaining that, in *Bullcoming* and *Melendez-Diaz*, the Supreme Court "rejected the argument that forensic reports that are purely observational and that do not accuse the defendant of wrongdoing are nontestimonial and therefore not subject to confrontation").

The Court agrees with the R&R that the trial court erred in admitting the challenged exhibits, and that the Appellate Division's assessment of this issue was an unreasonable application of established Supreme Court precedent. The Appellate Division rejected Petitioner's Confrontation Clause challenge because it determined that the "crime scene evidence

---

[3] Like the Second Circuit in *Garlick*, this Court concludes that the plurality opinion in *Williams*, "does not . . . yield a single, useful holding relevant to the case before us." *Garlick*, 1 F.4th at 133 (citation omitted) (alteration in original).

that defendant claims was admitted in violation of his right of confrontation was not testimonial, since it [did] not link the commission of the crime to a particular person." *Diaz*, 151 A.D.3d at 502–03 (quotation marks and citation omitted) (alteration in original).  As the Second Circuit found when reviewing identical reasoning in *Garlick*, "[t]his conclusion contradicts clearly established Supreme Court precedent," *Garlick*, 1 F.4th at 136 (discussing *People v. Garlick*, 144 A.D.3d 605, 606 (2016)), because it ignored Supreme Court cases rejecting this position, *id*. (quoting *Melendez-Diaz*, 557 U.S. at 313–14) (alteration in original).

  The Court also finds that the R&R correctly identified that the exhibits were testimonial.  Like the autopsy report at issue in *Garlick*, the crime scene documents were made "in aid of an active police investigation," and were clearly intended for use in a future trial, as they catalogued evidence of a shooting that occurred only two hours earlier, listed the crimes under investigation, and even indicated that a specific piece of evidence was of probative value.  *See id*. at 134; *see also* R&R at 53–54.  Moreover, the documents were similarly formalized, *see Garlick*, 1 F.4th at 134, in that they contained a unique identifying number, Jacklitsch's shield number, and, on some pages, an official NYPD seal, R&R at 54–55.  Finally, this evidence was used to support the prosecution's theory of the case because it corroborated witness testimony about the location of the shooter.  *See Garlick*, 1 F.4th at 134–35; R&R at 55–56.  Although Respondent characterizes the R&R's assessment as improperly "cobbl[ing] together a rule from legal principles articulated in *Melendez-Diaz* and *Bullcoming*," Resp. Obj. at 6, its approach mirrored that taken by the Second Circuit in *Garlick*, and the Court rejects Respondent's contention that *Garlick*'s reasoning was flawed.

  Moreover, the Court is not persuaded that the R&R's analysis should be rejected because it characterized the Appellate Division's analysis as resting on *Freycinet* instead of *John*.  Resp.

11

Obj. at 7–8.  First, the Appellate Division cited both *John* and *Freycinet* for the proposition that statements are testimonial only if they "link the commission of the crime to a particular person." *Diaz*, 151 A.D.3d at 503 (citing *John*, 27 N.Y.3d at 315 and *Freycinet*, 11 N.Y.3d at 42).  And, *John* clearly states that it is "not retreating from [the Court of Appeals'] prior decision[]" in *Freycinet*.  *John*, 27 N.Y.3d at 315.  Thus, the Court does not consider the R&R's characterization an error.  Additionally, even if the R&R did err in its assessment of the Appellate Division's decision, the Court does not find that this error calls into question the R&R's determination that the Appellate Division's conclusion represented an unreasonable application of Supreme Court precedent.

Accordingly, the Court ADOPTS the portion of the R&R that concludes that the Appellate Division's finding that Petitioner's Confrontation Clause rights were not violated is an unreasonable application of Supreme Court precedent.

C.  Harmless Error

Petitioner contends that the Appellate Division's finding that the admission of the challenged documents was harmless is objectively unreasonable because "no other evidence connected [him] to the fatal bullet."  Pet. Mem. at 42.

When assessing this question, the R&R determined that the admission of the documents was not harmless because, in light of the other evidence presented, "establishing—through ballistic evidence—the location of the shooter who killed Santiago, and what kind of gun he fired, were critical to the prosecution's case," and "this information appears to have come only from the crime scene report, the diagrams, and the testimony of [detectives] . . . who[] admittedly relied on . . . Jacklitsch's findings."  R&R at 61.  Respondent objects to the R&R's analysis on the ground that the R&R applied the wrong standard when considering whether any

12

Confrontation Clause violation was a harmless error and drew improper conclusions with respect to the importance of the challenged documents. Resp. Obj. at 8–15.

As discussed above, the Supreme Court has recently clarified that federal courts reviewing state court harmless error determinations can grant relief only if they determine (1) that the error had a "'substantial and injurious effect or influence' on the verdict," *Brown*, 142 S. Ct. at 1523 (quoting *Brecht*, 507 U.S. at 637), and (2) that the state court's determination was contrary to law or involved an unreasonable determination of law or fact, *id*. at 1525. But, as Respondent notes, rather than apply either of these standards, the R&R engaged in a *de novo* review of the evidence in Petitioner's case and determined, based on this review, that the error was not harmless. The Court, therefore, finds that the R&R erred in its assessment of the Appellate Division's harmless error finding, and shall conduct its own assessment.

Even assuming, *arguendo*, that the admission of the documents had a "substantial and injurious effect or influence" upon the verdict, *Brecht*, 507 U.S. at 637, the Appellate Division's finding otherwise does not constitute an unreasonable determination of law or fact, *see Brown*, 142 S. Ct. at 1525. In reaching its conclusion, the Appellate Division properly applied the New York Court of Appeals' articulation of the Supreme Court's holding and found that there was "no reasonable possibility that this evidence affected the verdict." *Diaz*, 151 A.D.3d at 503 (citing *People v. Crimmins*, 36 N.Y.2d 230, 237 (1975) (finding that errors are considered harmless only when "there is no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt")); *Chapman v. California*, 386 U.S. 18, 24 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

And, although reasonable minds could disagree about the weight of the evidence supporting Petitioner's guilt, the Court does not find that "every fair[-]minded jurist would agree that [the] error was prejudicial." *Brown*, 142 S. Ct. at 1525 (emphasis omitted). Multiple eyewitnesses named Petitioner as a shooter and placed him, Santiago, and the other shooting participants in locations that logically connect Petitioner's shooting to Santiago's death. *See* Trial Tr. II at 252, 260–63, 266–67, 269, 270, 273; Trial Tr. III at 509, 516–17; Trial Tr. IV at 521, 534, 591, 595–96, 710. Surveillance video footage also shows someone who appeared to be Petitioner passing a gun to another person following the shooting. *See* Trial Tr. III at 513–14. Even though the Court may not have found the admission of the documents to be harmless in light of the apparent contradictions and inconsistencies in some of the eyewitnesses' testimony and the prosecution's seeming reliance on the documents, the Court recognizes that a reasonable jurist may have reached that determination. Accordingly, the Court REJECTS the R&R with respect to its analysis of the Appellate Division's harmless error finding and DENIES the petition.

### III.  Certificate of Appealability

A petitioner may appeal the denial of a § 2254 application only if the district court or the court of appeals issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c). To obtain a COA, a petitioner must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks, alterations, and citation omitted). Petitioner requested that the Court issue a COA if it did not adopt the R&R's recommendation that his petition be granted. Pet. Res. at 10. Because the Court finds that reasonable jurists could debate

whether the Appellate Division's harmless error finding was unreasonable, Petitioner is entitled to a COA.

Accordingly, Petitioner's request for a COA is GRANTED.

## CONCLUSION

The Court has reviewed *de novo* those portions of the R&R to which Respondent specifically objects and has reviewed the remainder of the R&R for clear error.[4] For the reasons stated above, the Court ADOPTS the R&R with respect to its analysis of the Confrontation Clause violation, and REJECTS the R&R with respect to its analysis of the harmless error issue. Petitioner's application for a writ of habeas corpus under § 2254 is DENIED and his request for a COA is GRANTED.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: August 16, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[4] To the extent not discussed above, the Court finds the unchallenged portions of the R&R to be free of clear error.